IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN RISER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-1014 |
| | § | |
| | § | |
| ESTEBAN MONTENEGRO, | § | |
| | § | |
| *Defendant*. | § | |

___

**PLAINTIFF'S RULE 7(a) REPLY TO
DEFENDANT ESTEBAN MONTENEGRO'S ANSWER**
___

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Bryan Riser files his Reply under Rule 7(a) of the Federal Rules of Civil Procedure to Defendant Esteban Montenegro's ("Montenegro") Answer (Doc. 13) and would respectfully show the Court the following:

**I.
OVERVIEW OF PLAINTIFF'S COMPLAINT**

This is a civil rights action brought under 42 U.S.C. § 1983 and arising from Montenegro's arrest without probable cause of Riser for allegedly arranging two murders.[1] Riser filed his detailed, extensive Complaint on May 5, 2022. Riser hereby incorporates by reference all factual allegations set forth in his Complaint. To summarize, the arrest was based entirely on the uncorroborated statements of a person directly linked to five murders. Montenegro knew the

---

[1] Montenegro submitted two substantially similar probable cause affidavits; one concerning the murder of Liza Saenz and the other concerning the murder of Albert Douglas. Both affidavits contained material misrepresentations and/or omissions for the reasons set forth in Plaintiff's Complaint and herein.

witness was entirely unreliable for a number of reasons, including that his statements were flatly contradicted by those of other co-conspirators, and because a fellow police officer had directly informed Montenegro that the witness was unreliable and had a habit of deceiving law enforcement.

In late 2019, the Dallas District Attorney's office had told Montenegro that there was no probable cause to arrest Riser. More than a year later, not a single piece of additional evidence had been found. Nonetheless, Montenegro went ahead with the arrest that he had already been told was unsupported by probable cause.

Furthermore, the probable cause affidavits Montenegro submitted to obtain the warrants for Riser's arrest contained various misrepresentations and omissions, including a patently false assertion that cell tower analysis placed Riser and his squad car in the area of the murders at the time they were committed.

Riser spent over a month in jail as a result of the wrongful murder charge. He was finally released when a court found there was no probable cause to hold him. At that examining trial, the prosecution took the highly unusual position that there was in fact no probable cause and that Riser should not have been arrested. In fact, Dallas County District Attorney John Creuzot himself stated that there had been no probable cause to arrest Riser.

Montenegro filed his Original Answer, Affirmative Defenses and Jury Demand to Plaintiff's Original Complaint on September 30, 2022 (Doc. 13). He did not file a Motion to Dismiss asserting qualified immunity, although qualified immunity is raised in his Answer in his second affirmative defense. The Court has ordered Riser to file this Rule 7(a) Reply in its Order on Qualified Immunity, filed June 8, 2023 (Doc. 22), and Riser timely files his Reply.

## II.
## REPLY TO MONTENEGRO'S AFFIRMATIVE DEFENSES

Under Section III of his Answer, Montenegro has pleaded fourteen affirmative defenses; several are repetitive and merely restate the same concept in a slightly different way. For purposes of clarity, Riser uses the same corresponding paragraph numbering that Montenegro used for the affirmative defenses pleaded in his Answer.

1.      Riser denies that Montenegro did not deprive him of any Federal or Constitutionally protected rights and/or interests guaranteed under the United States Constitution or Federal law. (Answer at 10) Riser's lengthy, detailed Complaint explains precisely how Montenegro arrested Plaintiff for Capital Murder without probable cause. Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest. Riser's arrest was a seizure unsupported by probable cause and violated his rights as guaranteed by the Fourth Amendment of the United States Constitution.

2.      Riser denies that Montenegro is entitled to qualified immunity. (Answer at 10-11) Montenegro claims that on the occasion in question, he was a public official acting within the scope of his discretionary authority and in the course of his official responsibilities, and his conduct did not violate clearly established law of which a reasonable person would have known at the time, and was further objectively reasonable.

If a state actor's alleged misconduct could have been reasonably believed to be lawful, he may assert qualified immunity against a potential tort claim. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). To overcome this defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id*. Regarding the second prong, "[T]he salient question . . . is whether the

state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014).

When examining qualified immunity in a *Franks* violation, the court should only ask whether it was clearly established that making misrepresentations or omissions in a probable cause affidavit was unlawful, and whether a reasonable officer would know that making those particular misrepresentations or omissions would violate a person's right to a good faith showing of probable cause.

> It is clearly established that a warrant is not evidence of probable cause "if (1) the affiant, in support of the warrant, includes 'a false statement [made] knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"

*Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021).

A defendant in a *Franks* claim should not get a second bite at the qualified-immunity apple, as it were, by also applying qualified immunity analysis to the circumstances of the underlying false arrest. This was specifically addressed by the Fifth Circuit in *Winfrey v. Rogers*, in which the Fifth Circuit analyzed qualified immunity and found that the law was clearly established *by Franks itself*, without looking at any other precedent:

> Here, the clearly established constitutional right asserted by Junior is to be free from police arrest without a good faith showing of probable cause. Since *Franks v. Delaware*, it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement is necessary to the finding of probable cause.

*Winfrey v. Rogers*, 901 F.3d 483, 493–94 (5th Cir. 2018).

The Fifth Circuit has concluded that a "reasonable officer would know that lying to a judge in order to procure an arrest warrant was unlawful." *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007). An officer is liable for swearing to false information in an affidavit in support of a warrant, provided that: (1) the affiant knew the information was

false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information. *Franks v. Delaware*, 438 U. S. 154, 171 (1978). Allegations of material omissions are treated similarly to claims of material misstatements. *United States v. Park*, 531 F.2d 754, 758-59 (5th Cir. 1976); *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) (district court's determination that an affidavit for arrest warrant containing misstatements and omissions constituted constitutional violations under *Franks v. Delaware* was affirmed; affidavit that omitted facts negating probable cause was insufficient to support a finding of probable cause).

In his Complaint, Riser has cited facts that show Montenegro knowingly misrepresented and omitted material facts to the magistrate for the purpose of establishing probable cause. Riser's alleged connection to the murders was based entirely on statements made by Emmanuel Kilpatrick, who had admitted to killing Liza Saenz, Albert Douglas, and others. Montenegro misrepresented facts to falsely establish probable cause, including the following: (1) Montenegro knew that the FBI Cell Site Location data did *not* place Riser near the places of Saenz's and Douglas's disappearance and killing when they occurred, but represented that this data did place Riser in or about the area during the time frame of Douglas's and Saenz's disappearance and killing; (2) Montenegro presented the narrative provided by Kilpatrick as factual assertions, rather than making it clear that the assertions were simply statements made by Kilpatrick, who himself had admitted to the murders; (3) Montenegro made false statements in attempting to identify corroboration of Kilpatrick's story; and (4) Montenegro asserted that "FBI analysis placed the suspect's phone and squad car at the locations where the witness stated they met and planned the kidnapping of [Douglas and Saenz]," which was misleading and omitted critical context that would have shown its falsity.

In addition, Montenegro made material omissions; he did not disclose to the magistrate the following: (1) Kilpatrick's crystal-clear motive to lie: he was offered a reduced charge from capital murder to murder with the possibility of parole in exchange for offering information that Dallas police officer Riser was paying him to commit the murders of Saenz and Douglas; (2) Montenegro had been informed by a fellow Dallas police officer that Kilpatrick was not only unreliable, but also had a history of attempting to con law enforcement; and (3) Montenegro's interview with Kilpatrick's co-conspirator Kevin Kidd did not corroborate Kilpatrick's account; instead, Kidd's version of events contradicted Kilpatrick's in several key ways.

<u>Additional Facts Showing that Montenegro is Not Entitled to Qualified Immunity</u>

Adding an even greater level of specificity than is already set forth in the Complaint, Riser has additional facts that put a finer point to what Montenegro knew at the time he sought the arrest warrants for Riser:

- Montenegro was aware that Kilpatrick brutally murdered five people in four separate killing sprees over a three-week span in 2017 that claimed the lives of five individuals. Montenegro was aware of Kilpatrick's special level of viciousness.

- In March 2017, shortly after his killing spree, Kilpatrick was arrested for two of the murders. He sat in jail for more than two years, never mentioning Riser—until just before his trial for Capital Murder—when he claimed for the first time that Riser was involved in the killing spree.

- Montenegro's awareness that Kilpatrick was not truthful is proven in his own notes of his witness interviews of Kilpatrick. In July 2017, two years before Riser was implicated, Montenegro knew of Kilpatrick's untruthfulness when he wrote, "Kilpatrick is making up a story" that implicated a co-conspirator.

- Later, when interviewing Kilpatrick in August 2019, Montenegro again knew that Kilpatrick was untruthful; Montenegro wrote, "Wrong date, wrong timeline of murders."

- In the same interview, Kilpatrick claimed that the planning for the Saenz murder took place on a date <u>after</u> the murder had actually occurred. Any reasonable officer who watches Kilpatrick's interview would recognize that the interview is replete with false statements such as those just described. It is blatantly obvious that Kilpatrick was not telling the truth.

- Kilpatrick claimed that he and two co-conspirators (Kidd and Simmons) met with Riser at Miller Park in Dallas, at which time Kilpatrick claimed that they met Riser for instructions, and Riser showed all three of them a picture of Liza Saenz, and indicated that he wanted her killed. In separate interviews, Kidd denied ever seeing Riser when he was at Miller Park with Kilpatrick, and Simmons denied ever being at Miller Park with Kilpatrick on any occasion. Montenegro was the one who personally interviewed Kilpatrick, Kidd and Simmons and knew of these material inconsistencies in Kilpatrick's account.

- During the interview, Kilpatrick said there was a pre-determined plan to kill Douglas at Riser's request. When Montenegro interviewed Kidd, Kidd denied that there had ever been a plan to kill Douglas, and that Kilpatrick made a spontaneous decision to shoot Douglas in the head when the robbery of Douglas did not go as planned.

- Kilpatrick also claimed in an interview with Montenegro that a woman (with initials T.S.) was told by Riser to visit Kilpatrick in jail and tell him to keep his mouth shut. When Montenegro interviewed T.S., she said there was no truth whatsoever to that; she admitted to visiting Kilpatrick but denied any contact with Riser or that any such instructions had taken place.

- In the interview with Montenegro in which Kilpatrick first implicated Riser, he also implicated a second Dallas police officer (name withheld for security reasons) as being involved in criminal activity. The police clearly found this story so lacking in credibility that they waited more than two years to interview the other officer about it.

- At the time Montenegro interviewed Kilpatrick, he was a habitual offender with multiple felony convictions who had already done two prison stints in the Texas Department of Criminal Justice.

- In these interviews, Kilpatrick never raised with Montenegro any motive for why Riser would have wanted either of the two individuals dead, as he had no connection to either of them.

- Montenegro chose to believe a pathological liar and serial killer over a fellow Dallas police officer.

Riser has cited facts that show Kilpatrick's unreliability as a witness precludes a finding of probable cause to arrest Riser for Capital Murder. Montenegro's implicit assertion in his affidavits that Emmanuel Kilpatrick was reliable lacks any foundation in the evidence. Kilpatrick was neither credible nor reliable; his statements were wildly inconsistent and Montenegro knew they were contradicted by the established facts/evidence. No credible facts

from a *reliable* witness existed to support any reasonable belief of probable cause to arrest Riser on two counts of Capital Murder.

Montenegro is not entitled to qualified immunity because the facts that Riser has alleged make out a violation of a constitutional right; and (2) the right at issue was clearly established at the time of Montenegro's misconduct. *Jennings v. Patton*, 644 F. 3d 297, 300 (5th Cir. 2011).

3. Riser admits that in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), the Fifth Circuit held that in light of a defendant's assertion of qualified immunity, discovery is not appropriate until any challenges to the pleadings have been adjudicated. (Answer at 11)

4. Riser denies that he has failed to state a claim upon which relief may be granted. (Answer at 11) Riser's Complaint pleads facts that are more than sufficient to support the elements of his federal claim against Montenegro for unlawful seizure under 42 U.S.C. § 1983.

5. Riser denies that Montenegro complied with all federal laws. (Answer at 11) Riser's Complaint pleads facts that are more than sufficient to support the elements of his federal claim against Montenegro for unlawful seizure under 42 U.S.C. § 1983.

6. Riser denies that Montenegro's actions were lawful, proper, and justified under the circumstances. (Answer at 11) Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest. Riser's arrest was a seizure unsupported by probable cause and violated his rights as guaranteed by the Fourth Amendment of the United States Constitution.

7. Riser denies that Montenegro is not liable for punitive/exemplary damages or that he did not act with reckless or callous disregard for Riser's rights. (Answer at 11) Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest. Riser's arrest was a seizure unsupported by probable cause and violated his rights as  guaranteed by the Fourth Amendment

of the United States Constitution. The facts alleged in Riser's complaint clearly indicate that Montenegro acted either knowingly or with intentional disregard for Riser's constitutionally protected rights when he swore to probable cause affidavits that he knew to contain material misrepresentations/omissions as described in the Complaint and in the response to Affirmative Defense 2 above.

8. Riser denies that a warrant and/or probable cause existed to arrest and seize Riser. (Answer at 11) The warrant was obtained by Montenegro's material misrepresentations and omissions in the probable cause affidavits. The unlawful arrest was an unreasonable seizure of Riser and violated his rights, as guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983. Montenegro misrepresented the facts surrounding the murders in affidavits he presented to a magistrate to obtain an arrest warrant for Riser, even though probable cause did not otherwise exist, and Montenegro also omitted from his affidavits material facts within his knowledge which would have negated probable cause. Without the false or misleading statements and omissions, the affidavits contain nothing more than uncorroborated statements made by an alleged accomplice—an accomplice who had already been promised the chance of parole for his own crime, and therefore had ample incentive to implicate Riser.

9. Riser denies Montenegro's assertion that probable cause was found by an independent intermediary thereby breaking the causal chain and insulating Montenegro from liability, or that Montenegro is entitled to the protections of the independent intermediary doctrine. (Answer at 11) The holding of *Franks v. Delaware* is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted). But

"the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.*

To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" *after* the "material that is the subject of the alleged falsity or reckless disregard is set to one side." *Franks*, 438 U.S. at 171-72, 98 S. Ct. at 2684. After Montenegro's material misrepresentations and omissions are set to one side, absolutely nothing is left to support a probable cause finding. Without the false or misleading statements and omissions, the affidavits contain nothing more than uncorroborated statements made by an alleged accomplice—an accomplice who had already been promised the chance of parole for his own crime, and therefore had ample incentive to implicate Riser.

10. Riser denies Montenegro's actions were lawful, proper, and justified under the circumstances. (Answer at 11) Despite the total lack of probable cause to establish the existence of any crime, Montenegro caused Riser to be charged and detained for the offense of Capital Murder. Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest.

11. Riser denies that Montenegro did not act with reckless or callous disregard for Riser's rights. (Answer at 11) Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest. When the facts omitted from an affidavit for arrest warrant are clearly critical to a finding of probable cause, the fact of recklessness may be inferred from proof of the omission itself. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). Riser's assertion that Montenegro was at least reckless in misrepresenting facts and omitting material facts in order to obtain a warrant for his arrest states a valid cause of action under the Fourth Amendment. *Hart v. O'Brien*, 127 F.3d 424, 442 (5th Cir. 1997).

12. Riser denies that Montenegro did not act with malice, recklessness, callous indifference, or deliberate indifference to Riser's Constitutional or Federal statutory rights. (Answer at 11-12) Despite the total lack of probable cause to establish the existence of any crime, Montenegro caused Riser to be charged and detained for the offense of Capital Murder. The arrest of Riser was malicious and intentional on the part of Montenegro. Montenegro knowingly or recklessly made false statements, and/or omitted material exculpatory facts, in the probable cause affidavits which formed the basis of Riser's arrest. When the facts omitted from an affidavit for arrest warrant are clearly critical to a finding of probable cause, the fact of recklessness may be inferred from proof of the omission itself. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). Riser's assertion that Montenegro was at least reckless in misrepresenting facts and omitting material facts in order to obtain a warrant for his arrest states a valid cause of action under the Fourth Amendment. *Hart v. O'Brien*, 127 F.3d 424, 442 (5th Cir. 1997).

13. Riser denies his own acts or omissions caused or contributed to his alleged injuries. Riser denies that his intentional and/or negligent acts constituted the sole proximate cause of his injuries and damages. (Answer at 12) As shown in his detailed Complaint, Riser's damages were caused solely by Montenegro's civil rights violations.

14. Finally, Montenegro's final affirmative defense is not substantive but simply asserts that he reserves the right to raise additional affirmative defenses. (Answer at 12) Riser has no objection to this statement.

                                                  Respectfully submitted,

                                                  By:   /s/ *Don Tittle*
                                                           Don Tittle
                                                           State Bar No. 20080200

        don@dontittlelaw.com
        Law Offices of Don Tittle
        8350 N Central Expressway, Suite M1085
        (214) 522-8400
        (214) 389-1002 (fax)

        **ATTORNEY FOR PLAINTIFF**