IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN RISER, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:22-CV-01014-K |
| | § | |
| | § | |
| ESTEBAN MONTENEGRO, | § | |
|     Defendant. | § | |

**DEFENDANT ESTEBAN MONTENEGRO'S
RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Esteban Montenegro (hereinafter "Defendant" or "Montenegro"), Defendant in this matter and, pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rules 56.3 and 56.5, files his Response to Plaintiff's Motion for File a Sur-Reply to Defendant's Motion for Summary Judgment.

**I.
SUMMARY**

In his effort to try to overcome Officer Montenegro's entitlement to qualified immunity, Plaintiff seeks to file a Sur-Reply which simply reiterates the arguments he already made in his response. The interests of justice weigh against permitting him to file a Sur-Reply.

**II.
ARGUMENTS AND AUTHORITIES**

**A.   The Court has Discretion to Deny Plaintiff a Sur-Reply.**

Courts have discretion to deny a surresponse. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326 336 (5th Cir. 2017). Courts should weigh the interests of justice when deciding whether to permit a surresponse. *Id.* at 337 (citing *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 1:08-cv-487, 2016 WL 6915962, at *1 (S.D. Tex. Apr. 12, 2016).

### B. Plaintiff's Sur-Reply Fails to Meaningfully Address Montenegro's Affidavit or the Interview Recording of Plaintiff's Declarant.

In his effort to try to defeat Officer Montenegro's entitlement to qualified immunity, Plaintiff Riser filed a declaration of Officer Brent Maudlin (the "Maudlin declaration.")[1] Montenegro responded to the Maudlin declaration by producing a summary and recording of prior interview of Officer Maudlin's conducted by the Dallas Police Department's Public Integrity Unit (the "prior Maudlin interview.")

Maudlin's declaration characterizes Montenegro as "dogmatic" in his belief that Plaintiff was involved in the murder-for-hire scheme at issue in this case. But in the prior Maudlin interview, Maudlin confirms time and again his opinion that Montenegro would not "intentionally do anything unscrupulous" and that Montenegro would not "intentionally screw someone over to make a case, cop or not."[2] As Plaintiff admits in his proposed sur-reply, Maudlin was not fully aware of all the information Montenegro had concerning Emanuel Kirkpatrick.[3] Plaintiff's sur-reply merely reiterates his prior argument.

The fact that Plaintiff's sur-reply is merely reiterating his prior argument is apparent on its face. Plaintiff contends he needs a sur-reply to respond to "new evidence".[4] He claims the "new evidence" he needs to respond to is Montenegro's affidavit and the prior Maudlin interview. But in his proposed sur-reply, Plaintiff never cites the text in Montenegro's Affidavit. Moreover, Plaintiff cites the prior Maudlin interview only once.[5] Thus, Plaintiff's sur-reply is merely a regurgitation of his prior response as evidenced by his citation to his prior response and

---

[1] Doc. 51-1, at APP. 229–231.
[2] Doc. 57-1, at ¶8.
[3] Doc. 60-1, at n.6 ("Note that Maudlin said this despite apparently not knowing that Kilpatrick had, in fact, been offered such a deal prior to incriminating Riser.")
[4] Plaintiff's complaint that the evidence was not disclosed is inapposite because Plaintiff did not make written discovery requests for the information.
[5] Doc. 60-1, at n.6

the appendix thereto in 8 of the 15 footnotes. Accordingly, Plaintiff's request for leave to file a sur-reply should be denied.

### C. Plaintiff's Argument that Montenegro Changed the *Franks* Standard by Quoting a Fifth Circuit Case is Without Merit.

Even if Plaintiff could meet his burden to overcome Montenegro's entitlement to qualified immunity by showing a mere inference of recklessness, which he cannot, the next step would be to conduct a corrected affidavit analysis. Plaintiff, again, twists the analysis. Plaintiff asserts that Montenegro changed the recklessness standard by quoting *Hart v. O'Brien*.[6] But Plaintiff is trying to change the standard by arguing that mere negligence is sufficient to overcome qualified immunity. Montenegro has not changed the standard by quoting to controlling Fifth Circuit precedent.

Plaintiff cites *Hale v. Fish* for the proposition that "[t]he Fifth Circuit has repeatedly recognized that such critical omissions allow an inference of recklessness by their very nature."[7] In *Hale*, the court was faced with a probable cause affidavit that referred to "guard dogs" as "attack dogs"; the affidavit named Hale as the person who handcuffed the victim when Hale's companion handcuffed the victim; the affidavit suggested that the victim was kidnapped from within the jail, when the kidnapping occurred outside the jail; and other facts.[8] The Fifth Circuit in *Hale* found that "[a]lthough these misstatements demonstrate a slanting of the facts, probable cause would still have existed had the statements been accurate."[9] As recognized by the Fifth

---

[6] *See* Doc. 57 at 4 n.17 (quoting *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997).
[7] Doc. 60-1, at 3 (citing *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990)).
[8] *Hale*, 899 F.2d at 400.
[9] *Id.*

Circuit, the falsehood or omission must be "clearly critical" or material to a finding of probable cause.[10]

Plaintiff asserts his innocent explanations for his conduct and points to a scrivener's error. Plaintiff then leaps to a conclusion that Montenegro is no longer entitled to qualified immunity. The proper inquiry in establishing a *Franks* violation is "whether any reasonably competent officer possessing the information each officer had at the time [the officer] swore her affidavit could have concluded that a warrant should issue."[11] In fact, because of Montenegro's entitlement to the defense of qualified immunity, Plaintiff is required to demonstrate that not even *arguable* probable cause supported his arrest.[12] Plaintiff calls his *argument* proof of recklessness, but what Plaintiff is really arguing is for this Court to impermissibly apply a standard of negligence.

An officer is entitled to qualified immunity even if he did not have probable cause to arrest a suspect if a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law.[13] Officer Maudlin confirmed that Kilpatrick was a known felon **before** the "killing spree" who "had been rejected as an informant because due to concerns about his

---

[10] *Porter v. Lear*, 751 Fed. App'x 422, 429–30 (5th Cir. 2018) (citing *Hale*, 899 F.2d at n.3).
[11] *Jones v. Perez*, No. 17-11242, 2019 WL 5268618, *3 (5th Cir. Oct. 16, 2019) (quoting *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000) (holding that the officer did not violate *Franks* when she did not alert the magistrate to the reliability of a witness to the crime that was in serious doubt because the overall evidence established probable cause "even if the information on a reconstructed affidavit would not have sufficed.").
[12] *Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, *8 (5th Cir. Apr. 20, 2023) (to succeed on an unlawful arrest claim, a plaintiff "must show that there was 'not even arguably…probable cause' for her arrest") (quoting *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)) (ellipses in *Johnson*); *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023) ("Actual probable cause is not necessary; merely *arguable* probable cause is sufficient to trigger qualified immunity.") (emphasis in original); *De La Paz v. Coy*, 786 F.3d 367, 371, n.3 (5th Cir. 2015) (on summary judgment, a plaintiff must overcome the burden of showing that no reasonable official would have concluded that probable cause existed); *see also*, *e.g.*, *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023) (to prevail on a §1983 false arrest claim, the plaintiff must show that the officers did not have probable cause to make the arrest).
[13] *Voss v. Goode,* 954 F. 3d 234, 239 (5th Cir. 2020) citing *Freeman v. Gore,* 483 F. 3d 404, 415 (5th Cir. 2007) and *Goodson v. City of Corpus Christi,* 202 F. 3d 730, 736 (5th Cir. 2000).

reliability and criminal history."[14] Plaintiff's own expert, Kevin Horan, confirms that cellular records demonstrate twelve cellular communications between Plaintiff and the known felon Kilpatrick.[15] More significantly, these communications occurred during Kilpatrick's "February/March 2017 killing spree." In addition, Kilpatrick had texted Plaintiff the address of another one of the involved murderers, Kevin Kidd.[16] And the third felon involved, Jermon Simmons, confirmed that Kidd had told Simmons that "Kilpatrick had a 'crooked cop' in his pocket."[17] Plaintiff Riser was a Dallas Police Officer at that time – an officer who had embedded himself with the three felons who murdered Liza Saenz. Plaintiff Riser did this around the time of the murder Lisa Saenz and while Kilpatrick was on a murder spree. In assessing probable cause, Montenegro was not required to accept Plaintiff Riser's alleged "innocent" explanations for his conduct.

Montenegro found probable cause. Judge Kemp found probable cause. Montenegro is entitled to qualified immunity because, at the very least, arguable probable cause existed to arrest Riser.

## III.
## CONCLUSION

Plaintiff's motion for leave to file a Sur-Reply should be denied. The Court should enter summary judgment dismissing, with prejudice, Plaintiff's claims against Montenegro based on Montenegro's entitlement to qualified immunity.

---

[14] Dkt. 52-1, at 230 ¶13.
[15] Dkt. 52-1, at 219; Defendant objects that Plaintiff's expert cannot opine on Defendant's mental state or whether Defendant "purposely provided false information" in the arrest warrant affidavits. *See* FED. R. EVID. 702, 704; *United States v. Dvorin*, 817 F.3d 438, 448 (5th Cir. 2016). Defendant reserves his right to object to the expert's conclusions that the probable cause statement was "obviously false" concerning the meaning of the preliminary CAST Report and whether the opinion itself survives *Daubert*.
[16] Dkt. 37, at 6 ¶17.
[17] Dkt 52-1, at 281.

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**
State Bar No. 02883500
tbrandt@fhmbk.com
**STEPHEN D. HENNINGER**
State Bar No. 00784256
shenninger@fhmbk.com
**CHRISTOPHER BRANDT**
State Bar No. 24095984
cbrandt@fhmbk.com

FANNING HARPER MARTINSON
  BRANDT & KUTCHIN, P.C.
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys of record.

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**